UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

| | |
|---|---|
| **SHONDA LYNN WIGHTMAN,**<br><br>    **Plaintiff,**<br><br>**V.**<br><br>**CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | **CIVIL ACTION NO. 0:13-160-KKC**<br><br><br>**MEMORANDUM<br>OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. (DE 16; DE 19). Plaintiff Shonda Lynn Wightman brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief of an administrative decision of the Commissioner of Social Security denying her claim for Social Security Disability Insurance Benefits ("DIB"). The Court, having reviewed the record, will affirm the Commissioner's decision as it is supported by substantial evidence and was decided by the proper legal standards.

## I. OVERVIEW OF THE PROCESS

The Social Security Act and corresponding regulations provide a five-step sequential process for determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the administrative law judge ("ALJ") concludes that the claimant is or is not disabled, then the ALJ can complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof through the first four steps of the analysis; and, at step five, the burden shifts to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). The claimant must, in order to satisfy her burden of proof, provide sufficient facts to find in her favor. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Wightman filed her claim for DIB on January 10, 2011, alleging an onset date of July 31, 2006. (Tr. at 162.) The agency denied her application initially and on reconsideration. (Tr. at 68, 78.) Wightman requested review by an ALJ, and the ALJ held a

hearing on August 15, 2012. (Tr. at 26–56.) The ALJ subsequently issued an unfavorable decision on August 31, 2012. (Tr. at 8–21.)

At the time the ALJ rendered her decision, Wightman was forty-two years old. She has completed her GED. (Tr. at 32.) Wightman previously worked as a final assembler/quality control, sewing machine operator, and dish washer. (Tr. at 19, 192.) She alleges disability due to fibromyalgia, degenerative disc disease, bone spurs in her neck and back, possible multiple sclerosis, hypertension, osteoarthritis, neck swelling, and right knee pain and swelling. (Tr. at 59–60, 69.) Wightman's insured status expired on December 31, 2011. (Tr. at 13.)

At the first step, the ALJ determined that Wightman has not engaged in substantial gainful activity since her alleged onset date of July 31, 2006. (Tr. at 13.) At the second step, the ALJ found that Wightman suffers from the following severe impairments: "mild degenerative disc disease, lumbar spine with disc protrusion, L3-4; mild degenerative disc disease of the thoracic and cervical spine with disc bulge, C5-6; SLAP tear, left shoulder; chondromalacia and anterior cruciate ligament sprain, left knee; fibromyalgia; status-post right knee arthroscopy, 2006; and hypertension." (Tr. at 13.) At the third step, the ALJ concluded that Wightman does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. at 14–15.)

The ALJ then reviewed the record to determine Wightman's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In finding Wightman's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (1) daily activities; (2) location, duration, frequency, and

intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) additional treatment; (6) additional measures used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ also considered the relationship between Wightman and the doctors providing medical opinions; the supportability and consistency of the medical opinions with the entire record evidence; medical specialization; and other opinion evidence. 20 C.F.R. § 404.1527; SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006); SSR 96-2p, 1996 WL 374188 (July 2, 1996); SSR 96-5p, 1996 WL 374183 (July 2, 1996); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

After reviewing all the record evidence, the ALJ determined that Wightman has the RFC to perform light work with numerous nonexertional limitations. (Tr. at 15.) "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . [and may] require[] a good deal of walking or standing, or . . . [sitting and manipulating] arm or leg controls." 20 CFR §§ 404.1567(b), 416.967(b). The ALJ also noted that Wightman should adhere to the following limitations: "occasionally climb ramps or stairs; never ladder, ropes, o[r] scaffolds; occasionally balancing, stooping, kneeling, or crouching; never crawling; avoid full-body vibration and hazards such as unprotected heights or dangerous machinery; occasionally reaching and push or pull with left upper extremity." (Tr. at 15.)

The ALJ continued to the fourth step. The ALJ asked the vocational expert ("VE") whether a hypothetical individual with Wightman's education, experience, and RFC could perform any of her previous jobs. (Tr. at 51–52.) The VE testified that Wightman's ability to return to her job as a sewing machine operator was a "close" call but determined that she

could not perform her past work. (Tr. at 52.) The ALJ moved to the fifth step and asked if this hypothetical individual could perform other jobs available in the regional or national economy, and the VE stated that this hypothetical individual could perform the following jobs: ticket taker, non-hazardous security, surveillance monitor, and quality-control inspector. (Tr. at 52–53.) Therefore, the ALJ found Wightman not disabled. (Tr. at 20–21.)

The ALJ's decision that Wightman was not disabled from July 31, 2006 through December 31, 2011—the date she was last insured—became the final decision of the Commissioner when the Appeals Commission subsequently denied Wightman's request for review on August 27, 2013. (Tr. at 1–3.) Wightman has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the decision of the Commissioner, courts should not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the record as a whole, and "[t]he court 'may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (alteration in original) (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). Rather, courts must affirm the Commissioner's decision so long as it is supported by substantial evidence,

5

even if the court may have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

**IV. ANALYSIS**

Wightman presents three issues for review. First, she argues that the ALJ failed to properly analyze and afford the appropriate weight to her treating physician's medical opinion. Second, Wightman asserts that the VE responded to hypothetical questions that included an inaccurate or incomplete RFC. And third, she contends that the ALJ failed to comply with SSR 02-1p in evaluating her obesity and its effect on her RFC.

    *1. The ALJ did not err in evaluating Dr. Potter's medical opinion.*

The ALJ must evaluate medical opinion evidence according to the process set forth in 20 C.F.R. § 404.1527. This regulation states that the ALJ should weigh medical opinions according to the following factors: (1) whether the physician examined the claimant ("examining physician"); (2) whether the physician regularly treats the claimant and has an ongoing treatment relationship ("treating physician"); (3) whether medical evidence supports the physician's opinion ("supportability"); (4) whether the physician has provided consistent opinions concerning a claimant's alleged disabilities ("consistency"); (5) whether the physician is a specialist in the field related to the claimant's alleged disabilities ("specialization"); and (6) other factors evident in the medical records ("other factors"). *Id.*

Additionally, the "treating physician rule" creates the requirement that the ALJ give controlling weight to a treating physician's opinion if the opinion "'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)). But "'[i]t is an error to give an opinion controlling weight simply because it is the opinion of

6

a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent [with the] other substantial evidence in the case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). Therefore, "the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)). Plainly, the ALJ *must* identify and justify the amount of weight given to a treating physician's medical opinion. *Cole*, 661 F.3d at 938; *see also Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) ("Even if the ALJ does not give controlling weight to a treating physician's opinion, [s]he must still consider how much weight to give it.").

Wightman alleges that the ALJ failed to properly analyze and weigh the opinion of a treating source opinion—Dr. Ira Potter. (DE 16-1, at 8.) The ALJ, however, explicitly discussed Dr. Potter's medical opinion evidence, the amount of objective medical evidence from Dr. Potter and other treating physicians that contradicted Dr. Potter's conclusions, and the weight given to Dr. Potter's opinion. (Tr. at 18.)

Dr. Potter began treating Wightman in February 2011. (Tr. at 330–34.) Dr. Potter treated Wightman until July 2011 and—on July 2, **2012**—completed a medical assessment form that declared that Wightman had a very restricted RFC. (*See* Tr. at 313–78, 738–42.) At each visit, Dr. Potter noted that the physical examination of Wightman's musculoskeletal system was normal. (Tr. at 316, 320, 333, 346, 374.) Specifically, Dr. Potter declared that Wightman's straight-leg test was normal, her motor strength was normal, her range of motion was normal, and her extremities appeared normal. (Tr. at 316, 320, 333, 346, 374.) The only physical abnormality that Dr. Potter found was that Wightman

7

exhibited "tender IP and MCP joints." (Tr. at 316, 320, 333, 346, 374.) The ALJ recognized Dr. Potter's medical assessment and determined that his objective medical findings were consistent with the ALJ's RFC. (Tr. at 18.)

The ALJ then assigned "little weight" to Dr. Potter's restrictive RFC finding. (Tr. at 18, 738–42.) The ALJ found that Dr. Potter's restrictive RFC finding was not consistent with the record as a whole. (Tr. at 18.) In addition to Dr. Potter's "normal" musculoskeletal findings, the ALJ discussed a pattern of "normal" or "unremarkable" tests and assessments. (Tr. at 16–19; *see also* Tr. at 271, 272, 296, 305, 308, 316, 320, 324, 328, 333, 346, 374, 382, 405–06, 577, 586, 613, 618, 639, 641, 719, 732, 776, 809.)

Therefore, the ALJ did not err in evaluating Dr. Potter's medical opinion evidence. The ALJ incorporated Dr. Potter's objective medical findings, evaluated his RFC finding, compared the RFC finding with the other substantial evidence in the case record, and explicitly noted and justified the amount of weight given to Dr. Potter's RFC finding. (Tr. at 15–19.) The ALJ's treatment of Dr. Potter's medical opinion evidence is supported by substantial evidence and applies the correct legal standards. *See Gentry*, 741 F.3d at 723; *Lindsley*, 560 F.3d at 604.

2. *The VE did not respond to hypothetical questions that included an inaccurate or incomplete RFC.*

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Therefore, the hypothetical questions posed to a VE must encompass a claimant's RFC. *See id.*

Wightman asserts that the VE testified that a hypothetical individual with her RFC would not be able to work in the national economy. (DE 16-1, at 12.) Accordingly, she contends that the VE's testimony that there were jobs available in the national economy for her was based upon inaccurate or incomplete information. (DE 16-1, at 11–13.) But Wightman ignores the ALJ's actual RFC determination and bases her argument upon the properly discredited RFC finding from Dr. Potter.

The VE testified that there were numerous jobs available in the national economy for a hypothetical individual with the RFC described by the ALJ. (Tr. at 51–54.) The RFC that the VE's testimony relied upon is the same RFC that the ALJ found applicable to Wightman. (*Compare* Tr. at 15, *with* Tr. at 51–54.) Wightman's counsel then questioned the VE. Wightman's counsel posed a hypothetical question based upon Dr. Potter's RFC finding, and the VE testified that such a hypothetical individual would not be able to work in the national economy. (Tr. at 55.)

The ALJ properly discredited Dr. Potter's RFC finding, *see supra* Part IV.1; therefore, the VE did not respond to hypothetical questions that included an inaccurate or incomplete RFC. The VE responded to hypothetical questions that incorporated the RFC that the ALJ found applicable to Wightman. Accordingly, the ALJ's reliance on the VE's testimony that Wightman can perform other work is supported by substantial evidence and applies the correct legal standards. *See Ealy*, 594 F.3d at 516; *Lindsley*, 560 F.3d at 604.

3. *The ALJ properly evaluated Wightman's obesity in determining her RFC.*

Social Security Ruling 02-1p describes the process for evaluating a claimant's obesity. SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). Obesity is no longer qualified as a "listed impairment," but the ruling clarifies that the effects of obesity, and the combined

9

effects of obesity with other impairments, should be considered when evaluating a claimant's application. *Id.*, at *1. SSR 02-1p states:

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. . . . [O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting [on a] regular and continuing basis.

*Id.*, at *6. SSR 02-1p does *not* mandate a "'particular procedural mode of analysis for obese disability claimants.' Instead, SSR 02-1p provides that 'obesity, in combination with other impairments, 'may' increase the severity of the other limitations.'" *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (citations omitted) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006)).

Wightman claims that the ALJ erred in not explicitly stating Wightman's obesity as a factor that contributed to her RFC. (DE 16-1, at 13.) Specifically, Wightman asserts that the ALJ should have analyzed the effect of her obesity on her musculoskeletal body system. (DE 16-1, at 14.) Wightman's argument, however, mischaracterizes the ALJ's decision.

The ALJ noted that the objective medical evidence indicated that Wightman is "severe[ly] obese." (Tr. at 17.) The ALJ then analyzed Wightman's x-ray evidence, evidence from Kentucky Orthopedic Associates, and other record evidence describing Wightman's musculoskeletal condition. (Tr. at 17–19.) Every doctor examined Wightman in her obese state; therefore, the clinical findings and objective medical evidence inherently include the effects of her obesity. Further, the ALJ incorporated numerous obesity-related limitations in Wightman's RFC. (*See* Tr. at 15.)

SSR 02-1p does not mandate that the ALJ discuss the effect of a claimant's obesity in relation to every musculoskeletal medical record. *See Coldiron*, 391 F. App'x at 443. Rather, SSR 02-1p provides the lens with which the ALJ must evaluate the residual abilities of an obese claimant. The ALJ clearly noted Wightman's obesity and incorporated her obesity into her RFC; therefore, the ALJ's RFC assessment is supported by substantial evidence and applies the correct legal standards. *See Coldiron*, 391 F. App'x at 443; *Lindsley*, 560 F.3d at 604.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for judgment on the pleadings (DE 16) is **DENIED**;

2. The Commissioner's motion for summary judgment (DE 19) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously.

Dated March 19, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY